# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Grace Urquhart, having been duly sworn according to law, state as follows:

1. I am a Special Agent with the U.S. Department of Transportation, Office of Inspector General ("DOT-OIG"), and I am assigned to the Chicago, Midwestern Regional Office. I have been employed as a DOT-OIG Special Agent since June of 1995.

2. As a Special Agent with DOT-OIG, my duties include the investigation of Federal Aviation Administration ("FAA") criminal violations, which include violations of 49 U.S.C. § 46306. As a Special Agent, under the Inspector General Act of 1978, codified at 5 U.S.C. App. 3 § 1 et seq., specifically 5 U.S.C. App. 3 § 6(f), I have the authority to seek and execute warrants for arrest. I have participated in the execution of numerous search and arrest warrants, pursuant to which I have seized evidence of plans to conduct and/or participate in criminal activities. I have conducted interviews, organized recordings, conducted physical surveillance, and analyzed information obtained through FAA records pertaining to such cases.

3. I am the case agent assigned to a criminal investigation of Delbert Garfield STEWART, who is involved in operating an aircraft without a valid airman certificate.

4. The information set forth below is either known to me personally or was relayed to me by other law enforcement personnel, FAA Special Agents, and FAA Safety Inspectors. As this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during this investigation.

5. For the reasons stated below, there is probable cause to believe that Delbert G. STEWART, flew his single-engine Bellanca, without a valid airmen certificate, in violation of 49 U.S.C. § 46306(b)(7), cited below, on or about June 20, 2019, July 5, 2020, and March 8, 2021.

6. I base this affidavit on my personal investigation, information obtained by other agents, as well as with other state law enforcement partners.

## LAW

7. *Airman certificate requirements*. Federal law sets forth the conditions under which the FAA may issue an airman certificate to a qualified individual.[1] 49 U.S.C. § 44703. Federal law also sets forth the authority of the FAA to amend, modify, suspend or revoke a certificate that the FAA has issued. *See*, *e.g.*, 49 U.S.C. § 44709(b). There are various classes of an airman certificate, including a private pilot certificate. 14 C.F.R. § 61.5(a)(1). With some limited exceptions, a person who holds a private pilot certificate may not pilot an aircraft that is carrying passengers or property, for compensation or hire. 14 C.F.R. § 61.113(a). Also, a person who holds a private pilot certificate may not, in exchange for compensation or hire, act as a pilot in command. *Id.* Piloting an aircraft (i.e. serving as an airman) without an airman's certificate is a violation of federal law and punishable by up to three years of incarceration. 49 U.S.C. § 44306(b)(7). Specifically, Section 46306(b)(7) states a person who "knowingly and willfully serve or attempt to serve in any capacity as an airman, without an airman's certificate authorizing the individual to serve in that capacity" shall be fined under Title 18, imprisoned for up to three years, or both. *Id.* Airman is defined to include an individual "in command, or as pilot, mechanic, or member of the crew, who navigates aircraft when under way." 49 U.S.C. § 40102(a)(8)(A).

---

[1] The issuance of an airman certificate entails the FAA providing a physical certificate to the certificate holder.

8. Title 49, Section 46306(a) of the United States Code states that the aforementioned criminal statute applies only to aircraft which are not used to provide air transportation. Aircraft is defined as "any contrivance invented, used or designed to navigate, or fly in, the air." 49 U.S.C. § 40102(a)(6). Air transportation is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5). "Interstate air transportation" is defined as "the transportation of passengers or property by aircraft as a common carrier for compensation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(25).

9. *Aircraft registration requirements*. Federal law requires that "a person may operate an aircraft only when the aircraft is registered," with limited exceptions for (i) military aircraft, (ii) foreign aircraft and (iii) for a reasonable time after the transfer of ownership of an aircraft. 49 U.S.C. § 44101. The prerequisites and procedures for registration of an aircraft are set forth in Sections 44102 and 44103 of Title 49 of the U.S. Code as well in federal regulations, 14 C.F.R. § 47.1 et seq. Flying an unregistered aircraft is a violation of federal law and is punishable by up to three years of incarceration. 49 U.S.C. §§ 46306(b)(5) and (b)(6). Federal regulation, specifically 14 C.F.R. 47.40, requires that an aircraft be registered with the FAA every three years.

## PROBABLE CAUSE

10. Delbert Garfield STEWART, of Kent, Ohio, obtained his airman certificate – i.e. his private pilot certificate – in 1978, through the FAA, and owns a single-engine Bellanca, Model 17-30A, Serial # 73-3613, Tail # N495RF (hereinafter, the "Aircraft"), which is

3

registered with the FAA under his name. A picture of the Aircraft is attached hereto as Exhibit 1.[2]

11. STEWART purchased the Aircraft on or about October 3, 2010, and in the Department of Transportation Aircraft Bill of Sale, STEWART's listed address is his home address in Kent, Ohio. On or about November 1, 2010, August 8, 2013, July 30, 2016, and October 2, 2019, an application was submitted to the FAA to renew the registration of the Aircraft. On each of the foregoing applications, STEWART is listed as the registered owner of the Aircraft, and his address is his home address in Kent, Ohio.

12. The FAA issued an airman certificate[3] to STEWART in 1978. As detailed below, the FAA suspended STEWART's airman certificate on or about February 6, 2014.

13. During the course of this investigation, I learned that the FAA notified STEWART of a Notice of Proposed Certificate Action, which was sent to him on November 14, 2013, by certified and first-class mail. The November 14, 2013, Notice indicated that the FAA Administrator proposed to suspend STEWART's airman certificate, specifically his private pilot certificate, for a period of 180 days for violations of FAA regulations. Specifically, the November 14, 2013 Notice formally informed STEWART that he had violated numerous FAA regulations[4] during a September 2, 2013, flight from Paulding Northwest Atlanta Airport in

---

[2] As noted herein, for the flights giving rise to this Criminal Complaint, STEWART flew to or from the Portage County Regional Airport (FAA airport code KPOV) in Ravenna, Ohio. The airport is in the Northern District of Ohio, Eastern Division. I also understand that the Aircraft has been regularly stored in a hangar at that airport.
[3] The class of airman certificate issued to STEWART was a private pilot certificate.
[4] Specifically, STEWART had committed the following violations: (a) served as pilot in command of a civil aircraft under Instrument Flight Rules or in weather conditions without an instrument rating, in violation of 14 C.F.R. § 61.3(e)(1); (b) deviated from Air Traffic Control clearance, in violation of 14 C.F.R. § 91.123(a); (c) operated his aircraft contrary to Air Traffic Control instruction, in violation of 14 C.F.R. § 91.123(b); and (d) operated his Aircraft in a

Atlanta, Georgia, to Portage County Airport in Ravenna, Ohio. As reflected in the Notice, the violations arose from STEWART (a) piloting the Aircraft under conditions which STEWART was not authorized to pilot the Aircraft and (b) climbing to an elevation, without notifying air traffic control, above where STEWART had been cleared to fly. The November 14, 2013, Notice included an attached form, which notified STEWART of the means by which he could respond to the Notice, which included: (a) surrendering his airman certificate and beginning the 180 day suspension immediately; (b) submitting information that a violation of the regulation had not been committed; (c) requesting to discuss the matter informally, either in-person or via telephone, with an FAA attorney; and (d) requesting that the order be issued so that STEWART could appeal the order to the National Transportation Safety Board. The form also advised that if STEWART failed to advise the FAA of the means by which he intended to proceed, STEWART's airman certificate would be suspended.

14. STEWART responded with a December 1, 2013, letter to the FAA, attached hereto as Exhibit 2. In that letter, STEWART opined that the FAA does not have jurisdiction over him, as a private individual, purportedly because he is not engaged in commerce.

15. On February 6, 2014, the FAA issued and sent to STEWART an Order of Suspension, suspending his airman certificate. The Order of Suspension also detailed for STEWART how he could appeal the Order of Suspension, pursuant to 49 U.S.C. § 44709. The Order of Suspension advised STEWART that, absent an appeal, STEWART's airman certificate would be suspended for 180 days, beginning on the day of STEWART's surrender of his airman

---

careless or reckless manner so as to endanger the life or property of another, in violation of 14 C.F.R. § 91.13(a).

certificate to the FAA.[5]  The FAA Order of Suspension directed STEWART to surrender his airman certificate to the FAA.  Federal regulations, specifically 14 C.F.R. § 61.19(f), provides that, "The holder of any airman certificate that is issued under this part, and that has been suspended or revoked, must return that certificate to the FAA when requested to do so by the Administrator."  STEWART did not appeal the Order of Suspension.  STEWART did not surrender his airman certificate.

16. STEWART responded to the February 6, 2014, Order of Suspension with a letter, dated February 20, 2014, attached hereto as Exhibit 3.  In the letter, STEWART again submitted that the FAA does not have authority over him, purportedly because he is a private individual who is not engaged in commerce.

17. Federal regulations, specifically 14 C.F.R. § 61.19(a)(2), provide that "a pilot certificate is valid unless it is surrendered, suspended, or revoked."  In light of this regulation, because STEWART's airman certificate was a private pilot certificate, and because it was suspended by the FAA's February 6, 2014 Order, STEWART's airman certificate is and has remained suspended due to the FAA's February 6, 2014, Order.

18. As reflected below, STEWART continued to operate the Aircraft, despite his airman certificate having been suspended and later revoked.

19. On March 24, 2014, STEWART had a landing gear-up incident[6] at the Portage County Regional Airport (KPOV), Ravenna, Ohio.  In this incident, STEWART landed the Aircraft at KPOV, and failed to deploy the landing gear on the Aircraft, which resulted in the

---

[5] The Order of Suspension provided STEWART with the options of surrendering his airman certificate by either mailing it or delivering it to the Regional Counsel for the Great Lakes Region of the FAA.

[6] A landing gear-up incident involves a plane landing without the wheels, which are necessary for landing, being properly deployed.

Aircraft landing at KPOV with the body of the Aircraft in contact with the runway. As a result of this incident, the FAA investigated, and subsequently flagged STEWART's Aircraft for inspection, prior to any subsequent flights occurring. STEWART did not comply with the inspection requirement, and the airworthiness certificate for the Aircraft was suspended, pending inspection.[7] STEWART was notified of the suspension of the airworthiness certificate for the Aircraft by mail on September 2, 2014. STEWART did not appeal the suspension of the airworthiness certificate for the aircraft, and the airworthiness certificate for the Aircraft remains suspended.

20.     STEWART responded to the September 2, 2014, suspension of the airworthiness certificate with an email to the FAA, wherein STEWART submitted that he owned the airworthiness certificate and that STEWART did not recognize the FAA as having authority to confiscate, seize, or suspend seize the certificate.

21.     On June 20, 2019, STEWART piloted the Aircraft from Portage County Regional Airport (KPOV) in Ravenna, Ohio and landed at the Warsaw Indiana Airport (KASW), in Warsaw, Indiana. At the time of this flight, STEWART's airman certificate was still suspended per the February 6, 2014, Order of Suspension. While in Indiana, on June 22, 2019, STEWART flew the Aircraft on multiple flights, leaving from and returning to Warsaw Indiana Airport in Warsaw, Indiana. On three of these flights on June 22, 2019, STEWART flew the Aircraft with

---

[7] Section 44704 of Title 49, United States Code provides, "The registered owner of an aircraft may apply to the Administrator [of the FAA] for an airworthiness certificate for the aircraft. The Administrator shall issue an airworthiness certificate when the Administrator finds that the aircraft conforms to its type certificate and, after inspection, is in condition for safe operation." Federal regulation, specifically 14 CFR § 91.7, provides that, "No person may operate a civil aircraft unless it is in an airworthy condition."

7

passengers on board. On the last flight on this day, STEWART landed the Aircraft with the landing gear-up, again creating a hazardous condition.

22. On October 3, 2019, the FAA issued an Emergency Order of Revocation, revoking STEWART's airman certificate. This Order of Revocation was precipitated by STEWART flying the Aircraft while his airman certificate was suspended.

23. On February 27, 2020, STEWART was interviewed by the Affiant. STEWART said he did not acknowledge the FAA's authority regarding the use of his personal property. According to STEWART, the FAA could only regulate commerce and flights for hire. This was the reason STEWART believed the "Commerce Clause" did not pertain to him and believed this argument needed to be addressed in a courtroom. STEWART acknowledged he would accept a ruling issued by a United States District Court; however, he would not accept a ruling made by an administrative law judge. He believed the FAA's oversight was limited to those flying in commerce, and thought his situation was a constitutional matter. In STEWART's opinion, he believes he has right to a private pilot's license, and the government could not regulate personal travel. He thought the FAA overreached when they suspended his license, and specifically mentioned he would not be threatened by FAA Flight Standard District Office employees. During STEWART's interview, he admitted to having an incident in Warsaw, Indiana, that resulted in damage to his aircraft.

24. On March 3, 2020, the FAA sent STEWART a Notice of Proposed Assessment for $5,000, via certified mail, first-class mail, and electronic mail, for failing to surrender his airman certificate. Consistent with federal regulation, specifically 14 C.F.R. § 13.18(e), STEWART was provided 15 days to respond to the Notice of Proposed Assessment. STEWART did not respond or appeal the Notice of Proposed Assessment.

25. On May 12, 2020, the FAA assessed a civil penalty to STEWART in the amount of $5,000 via certified mail, first-class mail, and electronic mail, for failing to surrender his pilot private certificate. STEWART did not appeal the FAA's assessed civil penalty.

26. Between May 26, 2020, and July 5, 2020, the Aircraft flew multiple times from Portage County Airport (KPOV), Ravenna, Ohio. The tracking information for the Aircraft was provided by the Department of Homeland Security. Between May 26, 2020, and July 5, 2020, STEWART's airman certificate remained revoked.

27. On July 5, 2020, an FAA official and Ohio State Trooper Lt. Jeffrey Green attempted to investigate STEWART and the Aircraft when the Aircraft landed at Portage County Regional Airport (KPOV), Ravenna, Ohio. STEWART was the pilot of the Aircraft, and an adult female passenger was on-board. STEWART presented his revoked FAA airmen certificate and an Ohio driver's license to the FAA official and to Lt. Green. The FAA official advised STEWART that his airmen certificate was revoked, and the airworthiness certificate for the Aircraft was also suspended.

28. On July 9, 2020, an FAA official, accompanied by local law enforcement, continued its investigation of STEWART and the Aircraft at KPOV and noted numerous airworthiness discrepancies[8] with the Aircraft. The airworthiness discrepancies with the Aircraft were formally conveyed to STEWART by means of a "Condition Notice," which was given to STEWART, who was on the scene at KPOV again on that day. The airworthiness discrepancies were also verbally communicated to STEWART. The identified discrepancy items are

---

[8] Airworthiness discrepancies are physical issues with an aircraft which result in the aircraft failing to pass FAA-mandated inspection for airworthiness. The "discrepancy" is between the aircraft in its physical current condition and the condition in which the aircraft must exist, in order to pass inspection.

considered by the FAA to be an imminent hazard and would need to be addressed by STEWART prior to the Aircraft being able to fly. The airworthiness discrepancies with the Aircraft were identified during a physical inspection of the exterior of the aircraft and included physical conditions of the Aircraft which may have rendered the Aircraft unsafe for operation. The discrepancies included, but were not limited to, the following: a crack on the outer surface of the wing, damage to the outer surface of the fuselage, a crack on the outboard of the left gear well, and duct tape covering portions of the Aircraft.

29. On January 29, 2021, according to witnesses, STEWART attempted to land the Aircraft at Paulding Northwest Atlanta Airport (KPUJ) in Georgia, and claimed to Matthew Davis, a lineman at KPUJ, that he had experienced landing gear issues. STEWART's airman remained certificate revoked, and the airworthiness certificate for the Aircraft remained suspended.

30. On February 5, 2021, STEWART was seen operating the Aircraft, again without a valid airmen certificate, upon landing at KPUJ. Paulding County Sheriff's Office Corporal T. Leholm noted in incident report #20210204160 that he observed STEWART land the Aircraft. Leholm spoke with STEWART after STEWART landed the Aircraft, and STEWART stated to Leholm that everything was in accordance with FAA guidelines.

31. On March 5, 2021, STEWART was observed by Steve Tochterman of the FAA, at KPUJ in Georgia, where Tochterman witnessed STEWART performing maintenance on his Aircraft.

32. On March 8, 2021, Tochterman was notified by individuals at KPUJ in Georgia that STEWART took off in his Aircraft from KPUJ in Georgia. Stewart made a stop at a small

airport 50 miles north of Atlanta, and then continued to fly the Aircraft from Georgia to Ravenna, Ohio, where STEWART landed at KPOV at approximately 4 p.m.

33. On the March 8, 2021, flight from Georgia to KPOV, Stewart did not activate the transponder for his Aircraft until he was close to the KPOV airport.[9] As a result, STEWART's Aircraft was not able to be tracked via FlightAware or via FAA aircraft tracking tools, until STEWART turned on the transponder for his Aircraft shortly before landing.

34. Affiant, several other law enforcement witnesses, and FAA inspectors observed STEWART land his Aircraft at KPOV in Ravenna, Ohio, on March 8, 2021, and observed STEWART taxi the Aircraft to his hanger at KPOV airport.

35. Affiant spoke with STEWART after he exited his Aircraft, and again informed STEWART that his airmen certificate had been revoked. Stewart gave Affiant his airmen certificate and received a property receipt. Stewart stated he would not pilot his Aircraft until the matter was resolved.

36. Wherefore, based on my training, experience and knowledge of this investigation, I have the probable cause to believe, and do so believe that Delbert Garfield STEWART, flew the Aircraft, on or about June 20, 2019, on or about July 5, 2020, and on or about March 8, 2021,

---

[9] Federal regulation, specifically 14 C.F.R. § 91.225(f), requires that transponders (technically referred to as "ADS-B") must transmit data at all times during flight. Specifically, the regulation states, "Each person operating an aircraft equipped with ADS-B Out must operate this equipment in the transmit mode at all times unless, (1) Otherwise authorized by the FAA when the aircraft is performing" a law enforcement, national defense or similar purpose or (2) Otherwise directed by air traffic control. 14 C.F.R. § 91.225(f).

11

in the Northern District of Ohio and elsewhere, without having a valid airmen certificate, in violation of 49 U.S.C. § 46306 (b)(7).

Respectfully submitted,

*Grace Urquhart*

Grace Urquhart
Special Agent
U.S. Department of Transportation
Office of Inspector General

SUBSCRIBED AND SWORN TO ME THIS __13th__ DAY OF APRIL, 2021
VIA TELEPHONE AFTER SUBMISSION BY RELIABLE ELECTRONIC
MEANS. FED. R. CRIM. P. 4.1 and 41(d)(3).

*Carmen Henderson*
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT 1**





December 1, 2013

To: Federal Aviation Administration
Great Lakes Region
2300 East Devon Avenue
Des Plaines, Illinois 60018-4696

From: Delbert G. Stewart



RE: Allegations of Criminal Conduct (AGL-7 2013-GL-07-0070)

To Whom It May Concern:

I am in receipt of a Notice dated November 14, 2013 that was sent by regular mail, not by "certified mail" as claimed within the document. In that Notice, there are allegations of illegal conduct committed by this private individual on September 2, 2013. In this Notice, an agent or agents of the FAA claims that it and they have jurisdiction over this individual's private right to travel from one state to another whom is not engaged in "commerce" as defined within 49 CFR 383.5 and was not informed by ATC that a complaint on my operations would be issued.

As this agency should know, its jurisdiction is granted and "restrained" pursuant to the Commerce Clause of the U.S. Constitution; is specifically restrained from encroaching upon this individual's State Right to travel within the United States when the public record certifies I am not engaged in "commerce" as defined within Title 49 of the Code of Federal Regulations..

It is the judicial branch with jurisdiction over all allegations of Criminal and Civil law violations; a complaint is to be filed within the Judicial Branch against this person when my actions are alleged to be unlawful, not the Executive; therefore, I do not recognize the jurisdiction of the FAA to determine any of the facts with surrounding my lawful operation of a privately owned aircraft, not engaged in "commerce", on the date in question; if life and property were endangered by my "alleged" careless actions; it is a "competent court" within the Judicial having jurisdiction over such matters wherein claims of jurisdiction can be established with evidence presented; not to make presumptuous "coercive" accusations demanding I surrender a "certification" issued specifically as "private" restraining me from operating "for hire".

GOVERNMENT EXHIBIT 2

I therefore challenge the jurisdiction of this agency to regulate my State Right to enjoy my private property and freedom of movement on the date in question and at all other times, as I do not engage in "Commerce" and/or "for hire".

I demonstrated the ability to safely operate a privately owned and operated aircraft to one of "your agents" 37 years ago in which he "certified" to this Agency, and "the record", that I would not operate "for hire" or engage in "commerce;" subsequently, this Agency issued that "Certificate" with that demonstration and statement; it is all a matter of public record.

                                            Respectfully submitted

                                            Delbert G. Stewart

February 20, 2014

To: Attorney Kate Barber
C/O Federal Aviation Administration
2300 East Devon Avenue
Des Plaines, Illinois 60018-4696

Re: GL-7B 2013-GL-07-0070

Dear Kate:

I am in receipt of a "certified" mailing of an "Order of Suspension" wherein you, (Kate Barber), have taken it upon yourself to become the prosecutor, judge and jury of alleged "criminal actions" claiming yourself and the Department of Transportation having jurisdiction to regulate my actions as a "certified" private pilot whom was not and is not engaged in commerce as defined within Title 49 of the United States Code. The Department of Transportation has the jurisdiction and the authority to regulate those whom use aircraft to engage in "Commerce", not private individuals enjoying the use of their property while travelling from State to State.

You, Kate Barber, have made allegations of criminal conduct and have passed judgment upon me; denied my right of due process, and then issued your "Order of Suspension" specifically violating my State and U.S. guaranteed right of "due process" within the "Judicial Branch" of the State of Ohio and/or the United States. I was never informed of any conduct or "complaint" by any other "pilot" operating an aircraft at the same time as I; nor was I ever issued "a complaint" verbally or written by any Air Traffic Controller "complaining" that I endangered the lives and property of another causing him or her "to divert" the line of flight of another aircraft.

As an Attorney, you have "affirmed" or "sworn" to support the U.S. and State Constitution within the State Supreme Court you are "licensed" to practice law; therefore, you are cognizant of the fact that "the Executive" is specifically barred "the right" to "legislate" and adjudicate its own laws.

The U.S and Ohio Constitution supported by their respective "legislative codes" specifically bars any GSO to allege and then administratively <u>adjudicate</u> "alleged" criminal conduct unless a "specific waiver" of Judicial jurisdiction has been issued by the perpetrator.

GSO's are under contract with the American people and the U.S. and State Constitutions to support the "right of due process" within "the judicial branch" with the "filing" of "a complaint" with the "Clerk of Courts" of the "competent court" having "jurisdiction" to adjudicate those complaints; neither Kate Barber, the Department of Transportation nor its "subsidiary" Federal Aviation Administration



GOVERNMENT EXHIBIT 3

RECEIVED
FEB 26 2014
OFFICE OF REGIONAL COUNSEL
AGL-7

operate within the "judiciary" as a "competent court"; you may want to, but are specifically" barred by the "Private Certificate" and the U.S. and Ohio Constitution.

Your actions as an attorney Kate, are not unique; other attorneys have and are operating "outside" the rule of law by misusing and abusing "regulations" and "the legal process" as well as the United States Mail to fabricate "fictitious allegations" of unlawful actions and/or conduct as the "instrument of choice" to "coerce" an individual "to waive" *judicial jurisdiction*" guaranteed by the U.S. and Ohio Constitutions. You claim the Department of Transportation has regulatory and judicial jurisdiction over "private citizens" exercising "State Rights"; it does not, and neither do you Kate Barber.

Therefore, Kate Barber, in response to your "sham" of a legal process with procedural violations by yourself and others within the Department of Transportation, I rebuke your "coercive threats"; I will seek a permanent "restraining order(s) from the appropriate courts as needed and hold you personally accountable for issuing "threats" against me.

I demand you "cease and desist" all "administrative actions" in which you "allege" I committed reckless endangerment; file an "affidavit" or "complaint" from the specific individual within the United States Court for the Northern District of Ohio "complaining" that I endangered their life and/or property.

Under the law, I must inform and/or warn you that your personal actions are those of a "breech"; possibly a violation of the United States Code, including but not limited to, 18USC 241.

Respectfully submitted

Delbert G. Stewart